UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA ANN TARKINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15 CV 1600 JMB |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER[2]

Debra Ann Tarkington ("Plaintiff") appeals the decision of the Acting Commissioner of

Social Security ("Defendant") denying her applications for disability benefits under Title II of

the Social Security Act, see 42 U.S.C. §§ 401 et seq., and supplemental security income under

Title XVI, see 42 U.S.C. §§ 1381 et seq. Substantial evidence supports the Commissioner's

decision, and therefore it is **AFFIRMED**. See 42 U.S.C. § 405(g).

## I.     Background

### A.     Procedural History

On April 30, 2013, Plaintiff filed applications for disability benefits, arguing that she was

precluded from working due to the combined effect of autoimmune hepatitis, lupus, and

fibromyalgia. (Tr. 90) On July 31, 2013, Plaintiff's claims were denied upon initial

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] This matter is pending before the undersigned United States Magistrate Judge with the consent of the parties, pursuant to 28 U.S.C. § 636(c). The Court has considered the entire administrative record available in this matter, but will only discuss those portions of the record most pertinent to the issues raised by the parties.

consideration. (Tr. 105-109) Plaintiff requested a hearing before an administrative law judge ("ALJ") to contest the initial decision. (Tr. 111-12) Plaintiff appeared at the hearing (with counsel) on August 12, 2014, and testified concerning the nature of her disability, her functional limitations, and her past work. (Tr. 26-76) A vocational expert ("VE") also testified. (Tr. 61-76) The VE testified about the nature of Plaintiff's past work, and opined as to Plaintiff's ability to secure other work in the national economy, based upon Plaintiff's functional limitations, age, and education. (Id.) In a decision dated August 27, 2014, the ALJ found Plaintiff not disabled.

Plaintiff sought review of the ALJ's decision before the Appeals Council of the Social Security Administration. (Tr. 4) On September 18, 2015, the Appeals Council denied review. (Tr. 1-3) Therefore, the ALJ's August 2014 decision is the final decision of the Commissioner. Plaintiff has exhausted her administrative remedies, and her appeal is properly before this Court. See 42 U.S.C. § 405(g).

**B.      Administrative Hearing Testimony**

An administrative hearing in this matter was held on August 12, 2014. (Tr. 26) At the hearing, both Plaintiff and a vocational expert ("VE") testified. Both witnesses were questioned by the ALJ and by Plaintiff's attorney. At the outset of the hearing, Plaintiff's counsel noted no objections to the proposed exhibits, and specifically noted that Plaintiff was not alleging any listing. (Tr. 26-27)

**1)      Plaintiff's Testimony** (Tr. 28-66)

Plaintiff began her testimony by discussing the onset of her autoimmune hepatitis. (Tr. 28-29) Plaintiff described her past work, which included working at a restaurant in 2012, after

her alleged onset date.[3] (Tr. 31-33) Plaintiff acknowledged that she stopped working at the restaurant for reasons other than her disability, rather the restaurant closed in January of 2013. (Tr. 32) After the restaurant closed, Plaintiff received unemployment benefits, and she applied for other jobs as a condition of receiving such benefits. (Tr. 33-34)

Regarding her symptoms, Plaintiff testified that she "hurt[s] all the time." (Tr. 43) Plaintiff claimed that water hurts her body, which impairs her ability to take a shower or a bath. (Id.) Plaintiff also testified that she has trouble sleeping, because she "can't get comfortable," and "can't lay straight on [her] back, [or her] stomach." (Tr. 45) Plaintiff further testified that she drops things, like coffee, or food dishes. (Tr. 47)

Plaintiff admitted that her daily activities have, at times, included taking care of household chores, including changing sheets, washing dishes, and preparing meals. (Tr. 44-46) Plaintiff testified that she takes care of her minor son, including doing his laundry, making meals, and attending school functions such as parent/teacher conferences. (Tr. 44-45)

In response to questioning by her attorney, Plaintiff represented that: her pain is between a seven and an eight (on a ten-point scale) on a daily basis; she has to nap every day; she naps "[a]lmost all day long;" and when she is not napping, she "lay[s] in bed" watching movies and listening to music." (Tr. 48-51) Plaintiff also testified that, due to her depression and the fact that her medications have made her gain substantial amounts of weight, she "do[esn't] really go out of [her] house very often." (Tr. 52) Plaintiff also discussed hallucinations that she had in January of 2012. (Tr. 52-53) Plaintiff clarified that she does not have such hallucinations on a "normal" basis. (Tr. 52) Finally, Plaintiff also testified—in response to medical records

_____

[3] Plaintiff also had prior work as a housekeeper, launderer, deli worker, and assembly-line worker. (Tr. 34-36)

showing that she was treated for substance abuse, including marijuana—that she had never used marijuana, notwithstanding the medical records. (Tr. 53-54)

As to her physical limitations, Plaintiff stated that she cannot sit in the same position "for too long;" that she always has pain when she sits; that she cannot stand for the twenty minutes required to do the dishes—she has to sit down "two or three times;" that she has problems walking to the grocery store directly behind her apartment complex; and that she has problems bending, climbing ladders, squatting, and "reaching high." (Tr. 54-58)

2)    **Vocational Expert Testimony** (Tr. 61-75)

A vocational expert ("VE") testified regarding Plaintiff's past work, and Plaintiff's current ability to work. In connection with the VE's testimony, the ALJ sought clarification from Plaintiff concerning the exertional requirements of her past work at a deli and as a waitress. Plaintiff estimated that she had been required to lift up to fifty-pound pans of food, but clarified that the pans she had to lift were more than the weight of her nineteen pound granddaughter. (Tr. 62-65) The VE estimated that Plaintiff's job required medium-level exertion, as that term is defined in social security law. (Tr. 66)

The ALJ asked the VE a series of hypothetical questions to determine whether someone with Plaintiff's age, education, work experience, and specific functional limitations would be able to find a job in the local or national economy. (Tr. 67-70) The VE responded that such a hypothetical person would be able to perform the job duties of a patcher, a touch up screener, and a charge account clerk. (Tr. 69-70) Plaintiff's counsel also questioned the VE. Counsel asked whether a need to lie down during the work day would erode the available job base, and whether someone without a high school education would be able to perform the representative jobs. The VE advised that, depending on the circumstances (e.g., timing and frequency), the

need to lie down could preclude employment and would be viewed as an accommodation. Regarding education, the VE stated, inter alia, that the jobs identified could be performed by someone without a high school education.  (Tr. 71-73)

### C.    Forms Completed by Plaintiff

In her Function Report – Adult, completed on May 11, 2013, Plaintiff reported being able to clean, do laundry and dishes, prepare meals, and shop for food.

### D.    Relevant Medical Evidence

Plaintiff appears to have suffered from autoimmune hepatitis since at least December of 2011, when she was hospitalized for several days due to jaundice, fatigue, and general malaise. Multiple tests and imaging done during this time, including a liver biopsy, showed abnormal findings consistent with the diagnosis of autoimmune hepatitis.  (Tr. 259-95, 307)  At the same time, however, Plaintiff's autoimmune disorder appears to have improved and stabilized with the initiation of—and periodic adjustment to—her medication regimen.  (Tr. 259-61)

As to Plaintiff's alleged musculoskeletal impairments, repeated examinations have been unremarkable.  (See Tr. 259-95, 301-07, 413-566)  For example, objective imaging has shown no more than grade I anterolisthesis of L5 with spondylolysis.  (Tr. 468, 572)  Bone density testing was normal.  (Tr. 462)  On examination in July of 2012, Plaintiff had a normal gait, full strength throughout her body, no sensory deficits, and full reflexes.  (Tr. 326)

As to her mental impairments, Plaintiff did not see a mental health professional at the time of the administrative hearing, and her prior treatment with mental health professionals lasted for only a couple of months.  In May of 2013, Plaintiff was evaluated at Pathways Behavioral Health, and diagnosed with major depressive disorder, recurrent, (Tr. 378), but she

appears to have only received treatment until June of 2013.  (Tr. 404) (Wellness Plan dated June 17, 2013)

     **E.**    <u>**ALJ's Decision**</u>

     In evaluating Plaintiff's impairments, and whether Plaintiff was entitled to disability benefits, the ALJ followed the five-step analysis required by the Commissioner's regulations.  At step one, the ALJ found Plaintiff was not engaged in substantial gainful activity from the time of her alleged disability onset.  (Tr. 11)  The ALJ noted that Plaintiff worked at a restaurant after her alleged onset date, and continued working until that restaurant went out of business in January of 2013.  (Tr. 11, 17, 32)  The ALJ found, however, that Plaintiff's income from that work, when averaged out over a year, did not amount to "substantial gainful activity" under the Social Security Act.  (Tr. 11)  The ALJ expressly noted that the evidence of Plaintiff working after her alleged onset date called into question the credibility of Plaintiff's testimony that she is too disabled to work.  (<u>Id.</u>)

     At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) autoimmune hepatitis; (2) autoimmune deficiency disorder; and (3) spondylolysis.[4]  (Tr. 12) The ALJ found Plaintiff's depression to be a non-severe impairment because it "does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (<u>Id.</u>)  In arriving at this conclusion, the ALJ noted that:  Plaintiff admitted she did not see a mental health professional at the time; and although Plaintiff took depression medication, she received treatment for only a couple of months.  (<u>Id.</u>)  In making her finding regarding Plaintiff's depression, the ALJ also considered Plaintiff's alleged mental disorders in the context of the Commissioner's four broad functional areas, based on the evidence of record, including the

---

     [4] The record makes clear that the ALJ understood this condition to be a back impairment.

opinion of a psychological consultant.  (Tr. 12-13)  Plaintiff had only mild limitations in the

functional areas of:  (1) activities of daily living; (2) social functioning; and (3) concentration,

persistence, or pace.  (Tr. 12)  Regarding the fourth area, the ALJ found that Plaintiff had no

episodes of decompensation of an extended duration.  (Tr. 13)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments.  (Tr.

13)

As part of his analysis, the ALJ evaluated Plaintiff's credibility and the relevant opinion

evidence.  Regarding credibility, the ALJ found Plaintiff "not entirely credible," in her hearing

testimony and assertions of disabling symptoms and functional limitations.  (Tr. 14)  This finding

was largely based on the ALJ's view that:  the objective evidence did not support the level of

disability that Plaintiff was claiming; Plaintiff's daily activities did not support allegations of

total disability; and Plaintiff's work history weighed against her credibility.  (Tr. 15-17)  The

ALJ thought it relevant that Plaintiff was able to work at a restaurant, after her alleged disability

onset, and that she stopped working for a non-medical reason—the restaurant closed.  (Id.)

The ALJ gave great weight to the opinions of state agency medical consultant, Dr.

Kenneth Smith, M.D.  (Tr. 16)  Dr. Smith, who reviewed Plaintiff's medical records, opined that

Plaintiff had some moderate exertional limitations, which are broadly consistent with the RFC

found by the ALJ, which is described below.  (Tr. 85-86)  Dr. Smith thought Plaintiff fully

capable of performing at least some work.  (Tr. 87)

At step two, the ALJ considered and gave great weight to the opinions of state agency psychological consultant, Dr. Charles W. Watson, Psy.D.[5] (Tr. 13, 82-84) Dr. Watson found Plaintiff's affective and anxiety disorders to be non-severe, and that she had only mild limitations in the four primary functional areas. (Tr. 84)

The record does not appear to include any other medical or psychological opinion evidence.[6] The ALJ noted that the record lacked "any opinions from [Plaintiff's] treating physicians indicating that [she] is disabled or … has limitations greater than those determined in the residual functional capacity. Given [Plaintiff's] allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on [her] by her treating doctor." (Tr. 17)

The ALJ also considered an affidavit submitted by Plaintiff's adult daughter in support of Plaintiff's applications. (Tr. 257-58) The ALJ concluded that "[s]ignificant weight cannot be given to this third party report because it … is simply not consistent with the preponderance of objective findings, opinions, and observations by the medical doctors in this case." (Tr. 17)

Based on the medical evidence, Plaintiff's credibility, and the opinion evidence of record, the ALJ formulated the following RFC:

> [Plaintiff is capable of performing] light work … except she can lift and/or carry twenty pounds occasionally and ten pounds frequently. She can stand and walk for three hours out of an eight-hour workday and sit for six or more hours out of an eight-hour workday. She can climb ramps and stairs occasionally, but never ladders, ropes, or scaffolds. She is limited to occasional balancing, stooping, kneeling, crouching, and crawling. She must avoid concentrated exposure to

---

[5] The ALJ correctly noted the differences between step two findings and an RFC determination. (See Tr. 13)

[6] The ALJ considered the GAF scores assigned to Plaintiff which were below 50, but gave those scores little weight because they were inconsistent with the evidence and the remainder of Plaintiff's treatment record. (Tr. 13)

temperature extremes, unprotected heights, fast moving machinery, and vibration. She is limited to unskilled work consisting of one-to-two step instructions.

(Tr. 13)

At steps four and five, the ALJ relied on the VE's hearing testimony. At step four, the ALJ found that Plaintiff could not return to her past work. (Tr. 18) At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff is capable of making a transition to other work in the national economy. (Tr. 18) The ALJ found Plaintiff capable of working as a patcher, a touch up screener, or a charge account clerk. (Tr. 19) Accordingly, the ALJ found Plaintiff not disabled. (Id.)

## II.    Issues Before the Court

In her opening brief, Plaintiff lists some eight separate arguments in support of her claim that the ALJ's decision lacks substantial evidentiary support in the record as a whole.[7] Because many of her arguments overlap and require consideration of related legal and factual matters, Plaintiff's arguments are grouped as follows:[8]

- The ALJ erred at step two regarding severity;
- The ALJ failed to properly consider all of Plaintiff's limitations together and in finding that Plaintiff failed to meet a Listing;
- the ALJ erred in assessing Plaintiff's credibility;

---

[7] The numerous arguments advanced by Plaintiff resulted in a Brief in Support of the Complaint that was 59 pages in length. Local Rule 56-9.02 states that briefs "shall not exceed fifteen (15) standard typed pages, exclusive of signature page and attachments, except by leave of Court for good cause shown." The proper procedure, if Plaintiff needs to file a brief longer than fifteen pages, is for Plaintiff to file a motion requesting leave to file an over-length brief, and to include with the motion a statement of reasons. Plaintiff did not follow the proper procedure. Nonetheless, the Court has considered all of Plaintiff's arguments. To the extent Plaintiff wishes to raise as many issues as possible to see "what might stick," such a tactic is ill-suited for a Social Security appeal where, by law, an agency decision is entitled to great deference. Cf. Financial Holding Corp. v. Garnac Grain Co., Inc., 965 F.2d 591, 596 (8th Cir. 1992) (explaining that, except in the unusual or complicated case, raising numerous issues can leave "the impression that no single issue is important") (citations and quotations omitted).

[8] For purposes of analytical clarity, the Court considers the arguments in a different order from how they were presented by Plaintiff in her opening brief.

- the ALJ erred in assessing the opinion evidence;
- the VE's testimony did not constitute substantial evidence that Plaintiff could work; and
- the RFC is not supported by substantial evidence.

Defendant attempts to unpack Plaintiff's arguments and contends that the ALJ's conclusion that Plaintiff is not disabled and the relevant subsidiary decisions are supported by substantial evidence.

## III.   Standard of Review and Analytical Framework

"To be eligible for [disability] benefits, [Plaintiff] must prove that [she] is disabled …" Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will be found to have a disability "only if [her] physical or mental impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423 (d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During the process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Circ. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to

meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)); see also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eight Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir.2008).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ;
2. Plaintiff's vocational factors;
3. The medical evidence from treating and consulting physicians;
4. Plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;
5. Any corroboration by third parties of Plaintiff's impairments;
6. The testimony of vocational experts when required, including any hypothetical questions setting forth Plaintiff's impairments.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record.  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011).  A decision does not fall outsize that zone simply because this Court might have reached a different conclusion had it been the original finder of fact.  See also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusion may be drawn from the evidence, and [the court] may have reached a different outcome.").

**IV.**     **Discussion**

As noted above, Plaintiff makes several, often interrelated, arguments for reversal of the ALJ's decision.  The ALJ's thorough opinion detailing her decision is supported by substantial evidence, and therefore, this Court must affirm.

**A.**     **The ALJ's Severity Determinations**

While it is not entirely clear, Plaintiff appears to argue that the ALJ erred at step two by failing to find several different impairments to be "severe" impairments.  For example, Plaintiff argues that the ALJ erred by not finding her systemic lupus erythematosus to be a "severe" impairment.[9]  (ECF No. 22-28)  In her Reply brief, however, Plaintiff appears to narrow her contention to the argument that the ALJ should have found Plaintiff's depression and obesity to be severe impairments.  (ECF No. 27 at 2)  Overall, Plaintiff argues that the ALJ's RFC formulation was in error because it did not account for all of her impairments.  As will be explained in this Court's decision, the ALJ did account for all of the credible limitations associated with Plaintiff's impairments—both severe and non-severe.

_____

[9] The ALJ found Plaintiff to be suffering from three impairments that rose to the level of "severe" impairments:  (1) autoimmune hepatitis; (2) autoimmune deficiency disorder; and (3) spondylolysis.  Meanwhile, the ALJ found Plaintiff's depression to be non-severe.

Defendant argues that the ALJ did not err at step two. Defendant acknowledges that the ALJ did not specifically refer to systemic lupus erythematosus, but correctly notes that the ALJ referred to Plaintiff's condition in more general terms as "autoimmune deficiency disorder." (ECF No. 26 at 5) Defendant argues that the ALJ referred to the symptoms of Plaintiff's autoimmune disorders, and that therefore, the ALJ properly considered the impairment, even if the ALJ failed to use the specific terms that Plaintiff prefers.

An impairment is severe if it has more than a minimal impact on an individual's ability to do basic work activities. See 20 C.F.R. § 404.1521(a). An impairment "is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). Symptoms "will not be found to affect [a claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 1529(b). The burden of proving severity is Plaintiff's. See Kirby, 500 F.3d at 707.

As to the allegations that the ALJ did not sufficiently differentiate between different types of autoimmune disease, this is not reversible error in this case. The ALJ referred to Plaintiff's illness by using the more generic terms of autoimmune hepatitis and autoimmune deficiency disorder. It was unnecessary, at step two, for the ALJ to distinguish between different types of autoimmune disorders, because the step two analysis is simply a threshold determination of whether Plaintiff has impairments that are sufficiently severe to move on in the five-step analysis. The ALJ found Plaintiff's autoimmune disorder severe, and moved on to step three—

nothing more was required at step two.[10]  To be clear, however, in determining her RFC, the ALJ

considered all of Plaintiff's credible symptoms.  (Tr. 14)

As to Plaintiff's allegations that the ALJ erred in his consideration of her obesity and

depression at step two, Plaintiff did not allege obesity or depression in her disability applications.

This is a material omission.  See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001)

(observing that a failure to allege depression in an application for benefits is significant, even if

the evidence of depression was later developed).  Plaintiff's applications listed her impairments

as autoimmune hepatitis, lupus, and fibromyalgia.

Regarding Plaintiff's obesity,[11] the ALJ did, in fact, consider Plaintiff's weight gain in

the context of evaluating her functional abilities.  (Tr. 15-16)  The ALJ recognized that Plaintiff

had gained weight as a result of her medications, and considered Plaintiff's weight in evaluating

her pain, activities of daily living, and musculoskeletal impairments.   (Tr. 15-16)  In fact, the

ALJ noted that, despite her weight gain, Plaintiff's medications appeared to improve her overall

health.  Moreover, the medical evidence does not show that Plaintiff's obesity caused any

significant functional limitations.  Thus, the ALJ did not err in declining to list Plaintiff's obesity

as a severe impairment.  To the extent it was an error, it was harmless because the ALJ

accounted for Plaintiff's weight gain in determining Plaintiff's RFC.  See Brueggemann v.

Barnhart, 348 F.3d 689, 695 (8th Cir. 2003) (harmless error can be applied to an ALJ's decision).

---

[10] In considering Plaintiff's arguments, it is relevant to note that, at the administrative
hearing, Plaintiff did not clearly allege separate autoimmune impairments, but instead alleged
generally that she suffered from autoimmune hepatitis.  (Tr. 28)  In this regard, the ALJ's
severity findings were broader than Plaintiff's own testimony might suggest.

[11] Based on the record, a better characterization than "obesity" would be to refer to
Plaintiff's medication-related weight gain.  Plaintiff reported that she was 5'5", and went from
about 130 lbs. to over 200 lbs. due to the side-effects of her medication(s).  (See, e.g., Tr. 29)

As to Plaintiff's depression, substantial evidence supports the ALJ's determination that her depression was not severe under the regulations. Plaintiff was not receiving any treatment for depression from a psychiatrist or other mental-health provider for the vast majority of the timeframe under consideration in this matter. This indicates that Plaintiff's alleged depression was not as serious as she now claims. See Jones v. Callahan, 122 F.3d 1148, 1153 (8th Cir. 1997) (holding substantial evidence supported ALJ's conclusion that the plaintiff did not have a severe mental impairment where the plaintiff was not undergoing regular mental health treatment). More significantly, the ALJ specifically relied on the opinions of Dr. Watson, the state agency psychological consultant, who found Plaintiff's affective and anxiety disorders to be non-severe. (Tr. 13, 82-84) Therefore, at a minimum, substantial evidence supports the ALJ's determination that Plaintiff's depression does not meet the criteria for severity. See Kirby, 500 F.3d at 708 (holding that, although "severity is not an onerous requirement for the claimant to meet … it is also not a toothless standard") (internal citations omitted).

**B.    The ALJ's Listing Analysis at Step Three**

Plaintiff also argues that the ALJ erred by finding that Plaintiff did not meet a Listing.[12] (ECF No. 21 at 23-28) Specifically, Plaintiff argues that Plaintiff meets listing 14.02. Defendant disagrees, arguing that substantial evidence supports the ALJ's determinations regarding listing 14.02. (ECF No. 26 at 6-7)

As a general matter, to qualify for disability benefits at step three, a claimant must establish that her impairments meet or equal a listing. See KKC ex rel. Stoner. Colvin, 818 F.3d 364, 370 (8th Cir. 2016). Furthermore, "[a]n impairment meets a listing only if it meets *all* of the specified medical criteria." Id. (quoting Sullivan v. Zebley, 493 U.S. 521, 531 (1990)). "An

_____

[12] Plaintiff raises her listing argument, which is a step three argument, under a section heading suggesting errors in the ALJ's severity and RFC analyses, not step three.

impairment that manifests only some of those criteria, no matter how severely, does not qualify."

Sullivan, 493 U.S. at 530.  The burden is on Plaintiff at step three.  See McCoy v. Astrue, 648

F.3d 605, 611 (8th Cir. 2011).

With regard to listing 14.02, it is Plaintiff's burden to show:

(A) Involvement of two or more organs/body systems, with: (1) one of the organs/body systems involved to at least a moderate level of severity; and (2) at least two of the constitutional symptoms or signs (severe fatigue, fever malaise, or involuntary weight loss).
OR
(B) Repeated Manifestations of [systemic lupus] with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:  (1) limitation of activities of daily living; (2) limitation in maintaining social functioning; or (3) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace).

See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.02

In this case, Plaintiff waived her listing argument during the administrative hearing when

her attorney conceded on the record that "[w]e do not allege a listing."  (Tr. 27)  See Watson v.

Barnhart, 194 Fed. Appx. 526, 529 (10th Cir. 2006) (finding no error where the claimant's

counsel had conceded that the claimant was not arguing that her condition met or equaled a listed

impairment, and ALJ therefore did not analyze whether claimant's impairments met a listing);

see also Gloth v. Astrue, 2009 WL 3837471 (W.D. Mo. 2009) (same); cf. Gregg v. Barnhart, 354

F.3d 710, 713 (8th Cir. 2003) ("[A]n ALJ is not obliged to investigate a claim not presented at

the time of the application for benefits and not offered at the hearing as a basis for disability.")

(internal quotations omitted).[13]

_____

[13] It is important to enforce such waivers.  To allow a claimant to administratively disavow an argument and then raise the disavowed argument before a district court would permit claimants an unjustified second bite at the apple and thwart the administrative process. Moreover, Plaintiff offers no meaningful changed circumstances to indicate why the listing

Nonetheless, even if Plaintiff had not waived her listing issue, the ALJ's decision at step three is supported by substantial evidence. Plaintiff did not meet her burden to prove that she met the severity requirements of a listing. First, the ALJ's decision is consistent with the findings of Dr. Smith, the state agency doctor who evaluated Plaintiff's medical files. Dr. Smith thought that Plaintiff's impairments did not equal a listing because, with medication, her findings were "relatively normal." (Tr. 87) Dr. Smith cited specific objective medical evidence in support of his conclusions.

Well-supported opinion evidence provides grounds for finding that a claimant has not met her burden to prove that she met a listing. Cf. Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (upholding an ALJ's determination that a plaintiff is not disabled where the opinion is based on "state-agency opinions," along with other medical evidence). In addition, substantial evidence, such as Dr. Watson's opinion, supports the ALJ's determination that Plaintiff had no more than "mild limitations" in the activities of daily living, social functioning, or concentration, persistence, or pace. Thus, Plaintiff did not meet or equal listing 14.02B. Finally, the ALJ's observation that Plaintiff continued to work at a restaurant after her alleged onset date, and only stopped working when the restaurant closed, would also lend support to the ALJ's determination that Plaintiff did not meet a listing. Therefore, there is at least substantial evidence in support of the ALJ's step three analysis.

### C.      The ALJ's Adverse Credibility Finding

In evaluating Plaintiff's subjective complaints, the ALJ found Plaintiff to be "not entirely credible." (Tr. 14) Plaintiff contends that the ALJ erred in this regard. (ECF No. 21 at 42-47) Plaintiff discusses as a general matter what an ALJ is required to do in evaluating credibility, and

---

argument should now be considered. If her circumstances or conditions have changed, she may consider filing another application and starting the process anew.

states that an ALJ may not discount a plaintiff's allegations of pain solely because the objective medical evidence does not fully support the plaintiff's allegations. But Plaintiff does not point the Court clearly toward any particular, meaningful error or finding regarding the ALJ's credibility analysis. Nevertheless, the Court has reviewed the ALJ's credibility determination in accordance with the applicable regulations and governing case law. As explained below, the ALJ did not err in finding Plaintiff not entirely credible.

As a general matter, credibility determinations "are the province of the ALJ, and as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility, [the Court] will defer to her decision." See Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2013) (quoting Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005)). Furthermore, an ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" Id. (quoting Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)). In evaluating Plaintiff's credibility regarding the extent of her symptoms, the ALJ must consider all of the evidence, including objective medical evidence, and evidence relating to the factors enumerated in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), including (1) a plaintiff's daily activities; (2) the duration, frequency, and intensity of a plaintiff's pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) a plaintiff's functional restrictions. See Julin, 826 F.3d at 1086; see also 20 C.F.R. § 416.929(c).

Here, the ALJ followed the Polaski rubric and gave good reasons for discounting Plaintiff's credibility.[14] The ALJ's credibility assessment is supported by substantial evidence and entitled to deference in this Court.

First, when assessing credibility, an ALJ may properly consider whether subjective allegations of pain or other symptoms are inconsistent with the objective medical evidence. See Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006). In this case, the extent of symptoms, pain, and functional limitations claimed by Plaintiff are not supported by the objective medical evidence of record. For example, in multiple places throughout the record, Plaintiff claims that she is experiencing serious pain. (Tr. 48-49) Plaintiff claims that her pain is "all over her body," and that it "never stops." (Tr. 301) Plaintiff also represents that her pain is sometimes so intense that she cannot leave her bed all day. (Tr. 59) Yet, objective imaging showed no more than "grade 1 anterolisthesis of L5 with spondylolysis." (Tr. 572) Bone density testing was normal. (Tr. 461) Emergency room records and an examination in July of 2012 showed that Plaintiff had a normal gait and no issues with movement of extremities. (Tr. 326, 315)

Second, while a plaintiff's daily activities alone may not justify discounting a plaintiff's credibility, they constitute substantial evidence in support of the ALJ's credibility determination when viewed in the context of all the other evidence adduced by the ALJ. See Clevenger v. Social Sec. Admin., 567 F.3d 971, 976 (8th Cir. 2009) (holding that activities such as doing laundry, washing dishes, changing sheets, ironing, preparing meals, driving, attending church, and visiting friends and relatives supported an ALJ's decision to discredit a plaintiff's assertions of disabling pain). On this record, Plaintiff's daily activities were inconsistent with her

---

[14] An ALJ need not specifically cite Polaski, or specifically discuss each Polaski factor. See Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005); Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).

allegations of total disability.  For example, Plaintiff was able to shop at stores, make meals, wash laundry, and do dishes, as well as care for her dogs and attend school functions for her son. (Tr. 44-46)

Third, and perhaps most importantly, Plaintiff continued to work after her alleged onset date and worked until her employer went out of business.  It is proper for the ALJ to take such facts into account when assessing Plaintiff's credibility because "working generally demonstrates an ability to perform a substantial gainful activity."  Goff, 421 F.3d at 792; see also Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that [the plaintiff's] part-time work [was] inconsistent with her claim of disabling pain."); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged).  Likewise, it was also proper for the ALJ to consider that Plaintiff received unemployment benefits and looked for work.  (Tr. 169)  As the Eighth Circuit has pointed out, an unemployment applicant must affirmatively hold herself out as someone who is capable of working.  See Smith v. Colvin, 756 F.3d 621, 625 (8th Cir. 2014).  Therefore, it is inconsistent for a plaintiff to allege complete disability while receiving unemployment benefits.

Plaintiff's continued work was not her only inconsistent position in this matter.  Plaintiff also advised her rheumatologist that she was able to ambulate normally, complete daily activities, and climb stairs.  (Tr. 323)  Yet before the ALJ, Plaintiff claimed that she could walk no more than half a block due to back pain, and she also testified that some days her pain was so bad that she could not get out of bed.  (Tr. 54-55)  A plaintiff's inconsistent statements are a proper basis upon which to discount a plaintiff's credibility.  See McCoy, 648 F.3d at 614.

In sum, the ALJ gave good reasons for discounting Plaintiff's credibility, and substantial evidence supports the ALJ's conclusions in this regard. Therefore, that decision is entitled to deference in this Court. Julin, 826 F.3d at 1086. Plaintiff is not entitled to remand or other relief on the basis of the ALJ's adverse credibility determination.

### D.     The ALJ's Treatment of Opinion Evidence

Plaintiff also argues the ALJ erred in discounting the opinions of her treating physicians and giving the opinion of the state agency medical consultant, Dr. Kenneth Smith, too much weight. (ECF No. 21 at 41)

Plaintiff is correct that an opinion of a treating physician is usually entitled to "controlling weight" if the opinion "is supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record." Julin, 826 F.3d at 1088. On the other hand, a treating physician's opinion "may have limited weight if it provides conclusory statements only, or is inconsistent with the record," and the ALJ "may discount or even disregard the opinion where other medical assessments are supported by better or more thorough evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015).

The rules for weighing medical evidence that is not entitled to controlling weight are laid out at 20 C.F.R. § 404.1527(c), including: (1) whether the medical source has examined the patient upon whom they are opining; (2) the length of any treating relationship, frequency of examination, and the extent of the treating relationship; (3) whether the opinion is supported by the objective medical evidence; (4) consistency with the record as a whole; and (5) whether the doctor is a specialist. § 404.1527(c)(1)-(5). Whatever weight the ALJ assigns, "the ALJ must

give good reasons" for that weight. See Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001).

In her opening brief, Plaintiff does not sufficiently identify who her treating physician(s) is/are. Rather, she referred to the physicians at Phelps County Regional and Barnes Jewish Hospitals. Plaintiff refers to Dr. Kevin Korenblat in her Reply brief. (ECF Nos. 21 at 41-42, 27 at 4) The record provides only limited support for a claim that Dr. Korenblat was Plaintiff's "treating" physician, and some of that support comes from Plaintiff's hearing testimony. Plaintiff initially testified that Dr. Korenblat was her kidney specialist, and that Dr. Korenblat treated her every six months since December 24, 2011. Plaintiff clarified that, at the time of the hearing, she had not seen Dr. Korenblat for a year. (Tr. 36)

The medical records confirm that Dr. Korenblat treated Plaintiff in some capacity because there are hospital records indicating that Plaintiff was referred for testing by Dr. Korenblat or that, upon discharge from the ER, she was directed to follow up with Dr. Korenblat. (See, e.g., Tr. 267, 270, 336) But there are few if any treatment notes from Dr. Korenblat. Thus, even though the record suggests that Dr. Korenblat treated Plaintiff in some manner, the record does not establish the nature and extent of any treating relationship that the ALJ should have considered but did not.[15] Furthermore, there does not appear to be any medical report or opinion from Dr. Korenblat setting forth any work-related restrictions based on Plaintiff's treatment. See Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (holding that substantial evidence supported the ALJ's decision to not give controlling weight to a treating doctor's opinion, where, among other factors, the treating doctor had met with plaintiff on three prior occasions before filing out the checklist and where the doctor's treatment notes did not indicate the doctor had

---

[15] At the outset of the hearing before the ALJ, Plaintiff's counsel noted no objections to the proposed exhibits (i.e., the administrative record on review). (Tr. 26)

sufficient knowledge upon which to formulate an opinion as to plaintiff's ability to function in a workplace).

More significantly, Plaintiff does not identify any medical opinions submitted by any treating physician that imposed or recommended any work-related restrictions.  A "medical opinion" is an opinion about the nature and severity of an individual's impairment(s).  See 20 C.F.R. § § 404.1527(c)(2) and 416.927(c)(2).  In this case, the ALJ correctly noted that the record does not contain any opinions from [Plaintiff's] "treating physicians indicating that [Plaintiff] is disabled or even has limitations greater than those determined in the residual functional capacity.  Given [Plaintiff's] allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on [Plaintiff] by her treating doctor[s]."  (Tr. 17)  See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); see also Fischer v. Barnhart, 56 F. App'x 746, 748 (8th Cir. 2003) ("in discounting [the treating physician's] opinion, the ALJ properly noted that … [the treating physician] had never recommended any work restrictions for [the claimant]").

The only medical opinion of record discussing Plaintiff's physical work-related restrictions is from Dr. Smith, a consulting physician.  (Tr. 16, 84-87)  Dr. Smith opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 3 hours a day and sit for more than 6 hours a day; occasionally climb ramps, stairs, ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, or crawl; and must avoid concentrated exposure to extreme temperatures, vibrations, and hazards.  The ALJ found that Dr. Smith provided a thorough explanation for his findings, and his findings were consistent with the medical record.  The ALJ found Dr. Smith's opinion to be generally persuasive, gave it great

weight, and incorporated it into the RFC.  Likewise, the only medical opinion of record regarding restrictions associated with Plaintiff's mental condition is from Dr. Watson.  At step two, the ALJ gave Dr. Watson's opinions great weight.  Moreover, Dr. Watson's opinions are consistent with the ALJ's RFC analysis.  (Tr. 13, 83)[16]

To the extent Plaintiff contends that the ALJ erred in weighing the opinion of non-examining, state agency consultant Dr. Smith by giving his opinion great weight, the undersigned disagrees.  While more weight is generally given to the opinion of an examining source than to the opinion of a non-examining source, state agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation. Because Dr. Smith is an expert in SSA regulations, and his opinions are consistent with the evidence as a whole, the ALJ properly evaluated this opinion evidence.  See 20 C.F.R. § 404.1527(f)(2)(I) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, the ALJ must consider their findings as opinion evidence).

**E.      VE Testimony**

Plaintiff also contends that the VE's testimony does not constitute substantial evidence that Plaintiff can work.  The VE testified at the hearing in response to hypothetical questions posed by the ALJ.  The RFC found by the ALJ is consistent with the limitations put forth by the ALJ in her hypothetical questions.  In substance, the VE testified that a person of Plaintiff's age

---

[16] As noted above, the ALJ discounted the opinions in the third-party affidavit from Plaintiff's daughter.  (Tr. 17)  The ALJ did not err in this regard.  See Buckner v. Astrue, 646 F.3d 549, 559-60 (8th Cir. 2011) (same evidence that ALJ referred to in discrediting plaintiff's claims also discredited his girlfriend's statements).  Further, the undersigned finds no error in the ALJ's treatment of Plaintiff's GAF scores.  (Tr. 13)

and background, and having Plaintiff's RFC, would be able to do the jobs of a patcher, a touch up screener, and a charge account clerk. (Tr. 13, 19, 69-70)

Plaintiff argues that the job of charge account clerk requires a high school diploma and/or a good ability to read and write. Plaintiff contends that she could not perform this job because she attended special education classes for reading and math while in school, and she did not graduate from high school.

Even assuming that substantial evidence does not support Plaintiff's ability to work as a charge account clerk, the VE identified two other representative jobs—patcher and touch up screener. In view of the ALJ's well-supported findings that Plaintiff could perform these two other jobs, and between these two occupations, the vocational expert testified that 350 jobs exist in Missouri and 15,300 exist in the national economy. These figures constitute substantial evidence supporting the ALJ's conclusion that there are significant jobs in the economy Plaintiff can perform. See Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs in Missouri considered significant number); see also Welsh v. Colvin, 2014 WL 4290373 (8th Cir. 2014) (suggesting that fewer than 330 available jobs in Iowa was a significant number of jobs). The ALJ's error in identifying a charge account clerk job, if it was error,[17] had no effect on the outcome of the case and does not require reversal. See Brueggemann, 348 F.3d at 695 (applying harmless error analysis and noting that the standard is "whether the ALJ would have reached the same decision denying benefits" even absent the error). As such, substantial evidence exists to support the ALJ's conclusion that Plaintiff has jobs available to her and is not entitled to disability benefits.

_____

[17] The VE testified that a person without a high school education could perform the charge account clerk duties because "these are simple product type jobs and are learned in a very short period of time. The lack of a high school diploma presents other barriers and that has to do with placeability rather than whether or not they are capable of doing the job." (Tr. 73)

### F.     ALJ's RFC Determination

Many of Plaintiff's specified issues address the ALJ's RFC determination.  The gist of

Plaintiff's various arguments is that the ALJ's RFC determination is not supported by substantial

evidence.  The majority of Plaintiff's specific arguments that touch on the ALJ's RFC

determination are more fully address above.  In this section, the undersigned tackles the question

in the larger context.

A disability claimant's RFC is the most she can still do despite her limitations.  20 C.F.R.

§ 404.1545(a)(1).  The ALJ's determination of an individual's RFC should be "based on all the

evidence in the record, including 'the medical records, observations of treating physicians and

others, and an individual's own description of his limitations.'"  Krogmeier v. Barnhart, 249

F.3d 1019, 1024 (8th Cir. 2002) (internal quotation omitted).  "Some medical evidence is

necessary to support the ALJ's determination of the claimant's RFC, and the ALJ should obtain

medical evidence that addresses the claimant's ability to function in the workplace."  Lauer v.

Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (internal quotations omitted).  While more weight is

generally given to the opinion of an examining source than to the opinion of a non-examining

source, the ALJ must consider state agency medical consultants' findings as opinion evidence.

See 20 C.F.R. §§ 404.1527(d)(1); 404.1527(f)(2)(I).

In a case such as this, where no examining source has opined as to Plaintiff's abilities to

perform work-related activities, it is within the ALJ's authority to rely on the RFC provided by a

non-examining source.  See Meares v. Barnhart, 2003 WL 22283913, at * 11 (E.D. Mo. Aug, 29,

2003) and Melton v. Barnhart, 2003 WL 21976088, at *4 (S.D. Iowa Aug. 4, 2003) (indicating

that findings of fact and opinions made by non-examining agency physicians must be treated as

"expert opinion evidence of non-examining sources," and evaluated in conjunction with other medical evidence of record).

The record shows that none of Plaintiff's physicians had opined as to Plaintiff's physical ability to do work-related activities. Therefore, it was within the ALJ's authority to rely on the RFC provided by Dr. Smith, the state agency medical consultant. Further, the ALJ's determination regarding Plaintiff's RFC was consistent with Dr. Smith's opinions.

Moreover, the ALJ's RFC determination took into account all of Plaintiff's impairments / symptoms, to the extent they were credible and consistent with the objective medical evidence and other evidence. (Tr. 14) As previously discussed, the ALJ properly discounted Plaintiff's subjective complaints. Plaintiff's activities of daily activities were generally consistent with the RFC, as was the available medical evidence. After discussing the medical opinion evidence, the ALJ concluded that his RFC assessment was supported by the medical evidence of record considered as a whole, the opinion of the state agency doctor, and Plaintiff's activities of daily living. The undersigned finds that the RFC formulated by the ALJ is supported by substantial evidence in the record as a whole.

## V. Conclusion

For the foregoing reasons, this Court concludes that the ALJ's decision denying Plaintiff's applications for benefits is supported by substantial evidence on the record as a whole. The ALJ's decision in this matter demonstrates that the ALJ thoroughly evaluated the evidence in a manner consistent with the governing law. An ALJ's decision is not to be disturbed "'so long as the ... decision falls within the available zone of choice." Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011) (quoting Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008)). The ALJ's decision in

this matter falls well within the zone of choice.  The decision of the ALJ denying Plaintiff's claims for benefits is **AFFIRMED**.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner be **AFFIRMED**.  A separate Judgment in accordance with this Memorandum and Order is entered this same date.


/s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this  13th  day of  March , 2017